UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROBERT PINEO, | ) |
|        Petitioner | ) |
| v. | ) Civil No. 07-15-B-H |
| STATE OF MAINE, | ) |
|        Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Robert Pineo was convicted by a Maine jury of two counts of aggravated assault (Class B), one count of aggravated operating under the influence (Class C), and two counts of driving to endanger (Class E). He was sentenced to two ten-year concurrent terms of incarceration on the aggravated assaults, one five-year consecutive term on the operating under the influence count, and two six-month terms for the driving to endanger counts. After an unsuccessful direct appeal, Pineo filed a petition for post-conviction review that was amended to include one ground charging his attorney with delivering ineffective assistance on ten fronts.[1] An evidentiary hearing was held and the Superior Court Justice denied Pineo relief, making in his oral decision many factual findings concerning counsel's tactical decisions and Pineo's active and passive participation in the

---

[1] There were a variety of other grounds in Pineo's initial petition and his amended petition which are not relevant to the disposition of this federal habeas as this habeas is limited to a two-pronged ineffective assistance challenge.

decision making. The Maine Law Court granted a certificate of probable cause and, in a substantive opinion, affirmed the judgment.[2]

I recommend that the Court deny Pineo's 28 U.S.C. § 2254 petition because the Superior Court's factual findings apropos counsel's performance are presumptively correct and Pineo has not met his burden of rebutting those findings by clear and convincing evidence and the Maine Law Court's application of the ineffective assistance of counsel standard is neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent.

*Discussion*

**1.    Limitation of 28 U.S.C. § 2254 Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') provides that:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, <u>a determination of a factual issue made by a State court shall be presumed to be correct</u>. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

---

[2]    The certificate of probable cause suggests that the only question to be considered is the implication of <u>Florida v. Nixon</u>, 543 U.S. 175 (2004) vis-à-vis Pineo's representation. However, Pineo's brief to the Law Court asserted a catch-all ineffective assistance claim and the Law Court did discuss the overall performance of counsel in its opinion. The State of Maine concedes that these are the same two grounds that Pineo pressed in the Superior Court and in front of the Maine Law Court; therefore, there is no dispute concerning the 28 U.S.C. § 2254(b)(1) exhaustion/adequate presentation requirement.

28 U.S.C. § 2254(d),(e) (emphasis added).

With respect to § 2254(d)(1), this court reviews the decision of the Law Court through the following prism:

> The "contrary to" category "embraces cases in which a state court decision directly contravenes Supreme Court precedent." Mastracchio v. Vose, 274 F.3d 590, 597 (1st Cir.2001) (citation omitted). The "unreasonable application category" includes cases in which the state court's decisions, while not "contrary to" relevant Supreme Court precedent, nonetheless constitute an "unreasonable application" of that precedent. Id.
> The Supreme Court has said that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially undistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The "unreasonable application" analysis, however, affords relief only if "the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." Id. at 413.

Knight v. Spencer, 447 F.3d 6, 11 -12 (1st Cir. 2006) (emphasis added).

**II.     Pineo's Two 28 U.S.C. § 2254 Ineffective Assistance Claims**

Pineo has set forth two separate 28 U.S.C. § 2254 ineffective assistance claims. His first is that his attorney's concessions of guilt to all but the aggravated assault charges during his trial constituted ineffective assistance under United States v. Cronic, 466 U.S. 648 (1984) and Strickland v. Washington, 466 U.S. 668 (1984) and were the equivalent of involuntary pleas. (Sec. 2254 Petition at 2-12.)  I discuss the contours of his argument at greater length when reviewing the Maine Law Court's disposition of that claim.

Pineo's second 28 U.S.C. § 2254 complaint about counsel's performance takes a kitchen sink approach.  While opining that "concessions of guilt are of course the centerpiece of any ineffective assistance argument here," he asserts that this counsel's strategy "could be only seen as wholly inadequate in vindicating the trial rights of

3

Petitioner."  (Sec. 2254 Pet. at 12.)  He argues that not only did counsel concede his guilt on the lesser offenses but he basically conceded the prima facia guilt on the two aggravated assault counts.  (Id.)  Pineo explains:

> Relative to those charges of Aggravated Assault, the State needed to establish operation, causation, serious bodily injury, and recklessness.  The first three elements were explicitly conceded.  Further, by conceding intoxication, and at a level twice the legal limit, counsel also thereby conceded a prima facie case of recklessness, i.e., operating a motor vehicle at twice the legal limit for alcohol and causing an accident which resulted in serious bodily injury.  Thus nothing was gained by conceding so much, and in fact all was lost.

(Id. at 12-13.)   The other issues that Pineo thinks that counsel should have pressed were the fact that the driver of the other car had only a learner's permit and was out at night with little experience; the evidence that the accident occurred on Pineo's side of the road; the young driver's expressed feelings of fault; and the availability of an expert who could attack the blood alcohol test.  (Id. at 13.)  "No one can claim these were great defense options," Pineo's 28 U.S.C. § 2254 counsel concedes, "but there is more to work with there than in many cases."  (Id.)  Also in this catch-all ground, Pineo focuses on his attorney's closing argument which he describes as "acknowledging the alleged desires of the jury to 'lynch' and 'throttle'" Pineo, a tactic that "elevated the negative feelings in the courtroom against Petitioner" and which was a "disastrous approach with no reasonable basis."  (Id. at 14.)  Finally, Pineo's 28 U.S.C. § 2254 petition faults counsel for not trying to mitigate the damage done at trial in that he did not request a new pre-sentence report, did not present evidence to counteract the damaging prior report, and did not present any positive evidence through witnesses or letters supportive of  Pineo.  (Id. at 15.) Pineo does not specify what beneficial information might have appeared in a new pre-sentence

report or what information could have been used to counteract the prior report, and he does not identify the witnesses or letter writers he could have mustered in his favor.

### III.     State Courts' Determination of Factual Issues

   *A.     The October 3, 2001, Letter to Robert Pineo from Defense Counsel, Edmond Folsom*

Pineo's trial commenced October 22, 2001. Pineo's attorney, Edmond Folsom, wrote Pineo a letter dated October 2, 2001, that is crucial factual evidence vis-à-vis the disposition of this 28 U.S.C. § 2254 petition in view of the fact that the post-conviction court found that Pineo was aware of its content. Folsom wrote to Pineo:

> Dear Bob:
>    I am writing to recap the discussion I had with you today. As you know, this case is scheduled for trial the week of October 22, 2001. I have explained to you that I do not see any way to defeat the charge against you of Aggravated Operating Under the Influence. That charge is a Class C crime, punishable by a maximum of five years of imprisonment. You are also charged with two counts of Aggravated Assault. Aggravated Assault is a Class B Crime, punishable by a maximum of ten years of imprisonment. My plan for your defense is to attempt to secure an acquittal on the Aggravated Assault charges. Again, there is no realistic possibility of securing an acquittal on the Aggravated OUI charge, and if my plan for your defense succeeds, I would expect you to be sentenced to the maximum of five years for the Aggravated OUI conviction.
>    The state has offered to recommend a sentence of ten years with all but eight years suspended, followed by a term of probation, for your guilty plea to the charges against you. Because, in my view, you will receive a five-year sentence if we are successful at trial, the difference between the likely outcome of a successful trial and the state's recommendation is three additional years of incarceration and a period of probation. Under the circumstances, I understand that you wish to go forward with a trial and attempt to avoid a conviction of the Aggravated Assault charges. In making that decision, you understand that there is some prospect for you to receive a sentence of more than eight years of imprisonment if you are convicted of the Aggravated Assault charges after trial. As I explained to you, a judge is allowed to impose consecutive sentences if he or she determines that the seriousness of the conduct involved in a single criminal episode or the seriousness of the convicted person's record, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense. Because the more serious offense

5

here is Aggravated Assault, and because the offense carries a ten-year maximum, a judge could determine that this conduct and your criminal record require that you be sentenced to more than 10 years in prison.  If this were to happen you could receive a sentence, for instance, of ten years of imprisonment with a consecutive sentence of five years, with all but two years suspended, and probation.  You understand this possibility, but on the balance you have decided to bear the risk and go to trial, in an attempt to defeat the Aggravated Assault charges.

       I also discussed with you the potential value of expert testimony on the .16 blood-alcohol test result.  There is a great deal of evidence in the case that corroborates a blood-alcohol level of that magnitude.  I therefore am inclined to attempt to keep the blood test out of evidence with expert testimony, but to back off the attack on the blood test if the judge decides to admit the test into evidence and let the jury decide what weight to assign it.  This is because the main thrust of my argument will be that the state has not proved that you had a reckless state of mind (consciously disregarding the risk of producing serious bodily injury to another) at the time of your accident.  If the judge admits the blood test result, as he or she probably will, I do not believe our expert's testimony will be adequate to make the jury believe that the test result is wildly out of line with what your blood alcohol level actually was.  Again, there is just too much other evidence in the case that corroborates the blood alcohol test result.  I therefore think that if I spend a lot of energy attacking the blood test in front of the jury I will risk losing credibility with the jury on the recklessness issue.  In other words, if the jury thinks I will vigorously argue any point, no matter how obviously wrong my argument is, that hurts me with respect to better and more important arguments on which I need to be taken seriously.

(Letter from Edmund Folsom to Robert Pineo (Oct. 3, 2001), Docket No. 7.)

### B. *The Post-Conviction Court's Findings of Fact*

#### 1. *Post-Conviction Court's Factual Findings on Concession of Guilt and Blood Test Strategy* [3]

The post-conviction court, which is the fact-finder on the question of the attorney/client relationship as relevant to counsel's performance,[4] made the following

---

[3]     The failure to contest the blood test results is briefly mentioned in Pineo's totality-of-the-representation 28 U.S.C. § 2254 claim (Sec. 2254 Petition at 13) but is also discussed in setting forth the concession of guilt ground, in that post-conviction counsel points out that trial counsel testified in the post-conviction hearing that trial counsel was well aware that Pineo was reluctant to forfeit an expert witness attack on the blood tests (Id. at 3-4.)   The post-conviction court interlinked its findings on the concession of guilt question with the blood test expert strategy.

relevant findings of facts which are interspersed here with the interconnected conclusions of law. First the court made clear that its focus was on the first prong of the ineffective assistance standard:

> In this instance, with a few exceptions, the focus is on the first prong of the standard because there is not much dispute that the tactical decisions that were made affected the defenses that were raised. And I guess the most important one, the one most focused on by the petitioner, is the defendant's position with respect to his attorney's concession as to the …aggravated OUI charge. And I conclude that the claim that this was a total surprise to Mr. Pineo is contradicted by the letter that was …sent to Mr. Pineo by his attorney, which is State's Exhibit 1. And I conclude that Attorney Folsom raised the issue of the fact that he was going to focus his attention on the other charge, he explained it to Mr. Pineo, both orally and in writing, and I conclude that Mr. Pineo evinced his agreement to the strategy.
> 
> Now, there is later some discussions of the fact that maybe Mr. Pineo was going along with things that were said to him by his attorney and was acting in a rather passive way, but I don't find that that is something that can affect the fact that he indicated his agreement at the time. ….
> 
> So I therefore find that the strategy of conceding to the aggravated OUI was not only consented to but I find it to be a reasonable tactical decision under the circumstances of the case. It clearly wasn't the only possible tactical decision, and in the end it was an unsuccessful tactical decision, but hindsight is always 20/20. In this instance there was evidence that there was the smell of alcohol on Mr. Pineo's breath and in his – in his immediate vicinity. There w[ere] a number of witnesses who were going to testify to erratic and dangerous driving. There was a very high test. And all of those factors suggest and lead me to the conclusion that it was not unreasonable for Mr. Folsom to suggest to Mr. Pineo that he had to focus his efforts on the other charge – and in effect concede the – the aggravated OUI, which he did in fact do.
> 
> And there is an argument that as to the test that the test was contaminated, and that argument would be based on the testimony of Mr. Demers. But I've read Mr. Demers'[s] testimony at the trial and Mr. Tice's cross of Mr. Demers at the trial, and I think it was reasonable to conclude that the jury was not going to discount the test entirely, particularly given

---

[4] The Maine Law Court reviewed these findings of fact under a deferential 'clearly erroneous' standard of review. See Pineo v. State, 2006 ME 119, ¶11, 908 A.2d 632, 637. In a 28 U.S.C. § 2254 proceeding involving an ineffective assistance claim apropos which the post-conviction court convened an evidentiary hearing the § 2254(e)(1) presumption appears to apply directly to the post-conviction court's findings and not to the Maine Law Court's review of those findings.

that the standard for OUI is whether Mr. Pineo was impaired to any extent by alcohol at the time he was driving.

On tactical issues like this, I think the Law Court has said in the Levesque case, which is in 664 A.2d 849, that the deference needs to be given to the tactical decisions made by defense counsel and that's reviewable only for manifest unreasonableness. And I certainly do not find manifest unreasonableness here. In fact, the concession was part of a larger strategy which was to hold the case to a five-year conviction or a conviction including a sentence of only up to five years. Mr. Pineo was told this in the letter; I find he was also told in person.

The letter specifically warned Mr. Pineo of the downside of this strategy, and the downside of the strategy of which Mr. Pineo was warned was very close to what actually happened. In retrospect, the strategy failed, but I can't find serious incompetence of counsel under the standard previously discussed in that decision. Some cases are long shots, you do the best you can with what you have, and in the end Mr. Pineo might have been equally well served or even better served by the decision that fought the State's case in every respect. But a strategy of containment here where Mr. Folsom concluded and explained to Mr. Pineo that he thought it was too much of a stretch to argue that Mr. Pineo was not impaired was not unreasonable.

And Mr. Pineo was informed and agreed to that and, as I said before, there is an argument that at that time he was not fully on top of things …. And it may be that Mr. Pineo was not at his best and he went along with suggestions from his attorney that he now regrets and was a little too passive at the time, but I don't find that that is a basis to overturn the conviction on the ground that Mr. Folsom was ineffective.

Mr. Folsom talked to his client, he made decisions that were not seriously incompetent, he made them in consultation with Mr. Pineo, and the strategy was designed to allow Mr. Pineo to take some responsibility without exposing himself to the full weight of the – of the charges here and the full sentence that would have carried; and it was unsuccessful. But that does not make it seriously incompetent at the time.

There is one other point that I guess should be made, and that is that Mr. Pineo's alleged surprise at what was pretty much portrayed as a betrayal by counsel was never raised at trial. It wasn't raised at least in any real direct fashion in the initial [pro se post-conviction] petition filed by Mr. Pineo, it wasn't raised until the amended petition, and I think that undercuts the argument that there was a betrayal here. And that also distinguished this case from the case that was heavily relied on by petitioner in his papers, State of New Hampshire v. Anaya, …. [I]t was undisputed in Anaya that Mr Anaya was so unhappy during his attorney's closing argument that he had to be physically restrained and that he was objecting, and that is the – what is absolutely not shown on this record.

….

> Moving over to the other issues, although Mr. Pineo did want to contest the blood test, I conclude that that, as I think I've said before, that Mr. Folsom was not unreasonable in deciding it was too much of a stretch to argue that the …result of the evidence was that Mr. Pineo wasn't impaired at all.  And … that was I think clear between them.

(Post-conviction Dispositional Hr'g Tr. at 3 -9.)  And, at the close of his oral ruling when post-conviction counsel asked the court to address what counsel believed was "the much more substantive argument than ineffective assistance of counsel," which was whether the pleas were "constitutionally involuntary and unknowing pleas entered by the attorney," the court reiterated its factual conclusion that Pineo was consulted and the concession "was not done against his wishes, without his consent, or without his knowledge." (Id. at 19.)  The court repeated that it was crediting Folsom's testimony and the evidence of the letter.  (Id.)  Pressed further on this issue, the court made it clear that it was finding that "Mr. Pineo manifested his consent to the defense strategy in its entirety." (Id. at 20.)

### 2. *The Post-Conviction Court's findings regarding the overall performance of counsel*

As to Pineo's kitchen-sink ineffective assistance claim, the post- conviction court first addressed Pineo's dissatisfaction with his trial counsel's decision not to discredit the blood-alcohol evidence with an expert, Doctor Bruce Kerr, who had done a psychological evaluation of Pineo and was available to testify at trial.  The post-conviction court considered trial counsel's explanation for not using Kerr at trial and found that it was unlikely that Kerr's evidence on an abnormal condition would have been admitted at that stage as there is no indication in the report that Pineo's depression qualified as an abnormal condition or that his OUI could be attributed to this depression.  (Post-conviction Dispositional Hr'g Tr. at 9-10.)  The court credited trial counsel's explanation

9

that he was concerned that the report led to the potential conclusion that Pineo's OUI was habituated behavior. (Id. at 10.) The post-conviction court also indicated that trial counsel made the decision because of a concern that Kerr knew of additional convictions of which the State did not learn until sentencing and that, during his consultation with Kerr, Pineo shrugged off (with expletives) his decision to, on more than one occasion, drive home after having had a few drinks. (Id. at 10-11.) The post-conviction court concluded: "So I don't find there was any prejudice and [it was] a reasonable decision by Attorney Folsom not to call or attempt to call or use Dr. Kerr during the course of the case." (Id. at 11.)

With regards to counsel's summation, the court did not "find that it was unreasonable or incompetent to directly take on with the jury the issue of Mr. Pineo's decision not to testify." (Id. at 11.) The court tied this finding to the fact that one of the two women in the other car involved in the accident suffered such serious permanent injury, suffering that was palpable to the jury:

> And I also conclude, and I've looked [at] and reread the testimony of Ms. Buckingham, and while I can't obviously put myself in the position of someone who was present in the courtroom when she testified, I certainly think that I'm willing to credit Mr. Folsom's testimony that after her testimony and after her appearance as a witness in the courtroom as the person crippled in this accident there was a very negative dynamic in the courtroom, that there was a very powerful image left with the jury of the victim crippled by Mr. Pineo's driving, and that Mr. Folsom was not unreasonable in deciding that he had to take that head on in argument and acknowledge that the jury might have negative feelings and go so far as to say you may want to lynch him but that's not your role. And one can argue that that was in light of the ultimate result a … mistake, but at the time it – I don't find it to have been unreasonable.

(Id. at 12.)

10

With respect to counsel's closing argument on the issue of recklessness, the post-conviction court stated that trial counsel had conceded at the post-conviction hearing that he was not at his most eloquent when discussing this issue, but in the post-conviction court's opinion the trial transcript reflects that counsel did express this argument. (Id. at 13.) The court observed that counsel's strategy, "although ultimately unsuccessful, was fairly shrewd" in that he managed to avoid an intoxication instruction which would have made clear that self-induced intoxication is really not a defense to recklessness. (Id. at 14.) The justice stated that the argument that there was an absence of recklessness had been made and that the summation did not meet the standard for post-conviction relief on a theory of deficient performance. (Id. at 13.)

On the issue of contesting causation, raised again here, the post-conviction court reasoned:

> I think it was a reasonable decision not to contest causation. The fact that the other driver was using a learner's permit was brought out at trial. And I also think that Mr. Folsom's view that any kind of defense that was organized along the theory that the victim was somehow responsible for the accident would have been a very bad idea and would have resulted in negative consequences and was not tactically unreasonable to avoid that to the extent possible.

(Id. at 14.)

As for Pineo's sentence-related attacks on counsel's performance, the post-conviction court found unconvincing Pineo's assertion that Pineo had wanted a pre-sentence investigation (id. at 15):

> It may very well have been that he wanted a stay, but I don't find that he wanted or insisted on a presentence investigation or communicated that to Mr. Folsom. And I ---particularly true because a presentence investigation would not have been helpful, and so I don't credit Mr. Pineo's testimony that he wanted a presentence investigation. And in fact the presentence investigation from the prior case that was ultimately furnished to Mr.

11

> Pineo did not help him in any way. In fact, I think it led very directly to the sentence he received.
> 
> I think I've already mentioned that I don't think Dr. Kerr would have been helpful at sentencing with his testimony that Mr. Pineo was still minimizing. And at sentencing it seemed to me that the defense argued reasonably that Mr. Pineo's concession was evidence of acceptance of responsibility and remorse. He did argue … against the use of consecutive sentences, and he raised that issue in the sentence appeal.

(Id. at 15-16.)

Finally, with respect to counsel's overall performance, the post-conviction court concluded its oral order:

> And I would lastly say that it is of some weight here that Justice Cole in the sentencing transcript at Page 26 complimented Mr. Folsom on his good work in the case, and that is not something that I routinely see in sentencing transcripts. And I think that represents the trial judge's view that Mr. Folsom had worked hard, albeit in a losing cause, and had done as good a job as was possible in a losing cause. And I think people might disagree whether he did as good a job as possible, but I don't think that the record either commands or allows me to find serious incompetence of counsel amounting to performance below what might have been expected from an ordinary attorney.

(Id. at 18-19.)[5]

### IV. The Maine Law Court's Adjudication of Pineo's Claims through the 28 U.S.C. § 2254(d) Prism

#### A. *The Maine Law Court's Rejection of Pineo's <u>Cronic</u> Argument*

In his first 28 U.S.C. § 2254 claim, Pineo argues that counsel delivered inadequate assistance under the Sixth Amendment of the United States Constitution when he conceded guilt to the charges of aggravated OUI and driving to endanger and decided to focus on challenging only the more serious aggravated assault charges.

---

[5] As with the previous section, although I caption this section as the post-conviction court's factual finding, I recognize that I have included conclusions that are better characterized as legal than factual. I don't think it is possible to understand the significance of the post-conviction court's factual findings without putting them in context of the framework guiding the court's factual inquiry.

12

First, although even in his reply memorandum in support of his 28 U.S.C. § 2254 petition Pineo continues to take issue with the state courts' finding of Pineo's consent to the concessions of guilt (Reply Mem. at 1), there is no doubt in view of the factual conclusions set forth above that the post-conviction court found as a fact that Pineo was well aware of counsel's proposed strategy and that he implicitly consented to this approach. This finding is afforded the 28 U.S.C. § 2254(e) presumption of correctness. I have considered Pineo's references to his post-conviction testimony, and that of Attorney Folsom and Pineo's daughter (Sec. 2254 Pet. at 2-4) in light of the letter from Folsom to Pineo painstakingly setting forth the issues, concerns, and the proposed approach, as well as the testimony in the post-conviction transcripts upon which the post-conviction court made its factual findings, and I conclude that there is no basis for this court to revisit the state courts' conclusion that there was at least tacit consent to this strategy on Pineo's part.

With regards to his 28 U.S.C. § 2254(d) legal argument, as he did in front of the state courts, Pineo relies on the presumption of prejudice articulated in United States v. Cronic, 466 U.S. 648 (1984) and juxtaposes his cast to that of Florida v. Nixon, 543 U.S. 175 (2004). As he did in the state court post-conviction proceeding and appeal, in this 28 U.S.C. § 2254 petition Pineo presses an argument which boils down to an assertion that counsel's concession of guilt was the functional equivalent of a guilty plea to the lesser counts and he relies on Boykin v. Alabama, in which the United States Supreme Court held (over a dissent) that there must be an "affirmative showing" on the part of the defendant that he is pleading guilty intelligently and voluntarily. 395 U.S. 238, 242-44 (1969).

13

The problem for Pineo is <u>Florida v. Nixon</u>, 543 U.S. 175 (2004) and the reality that this Court must review his <u>Cronic</u> argument through the 28 U.S.C. § 2254(d) filter. <u>Nixon</u> involved a concession to the jury that the defendant committed a grisly murder in the hopes that this concession would assist the defendant in convincing the jury to impose a life sentence rather than the death penalty.  543 U.S. at 181-82.   The evidence was that counsel explained his strategy to Nixon and Nixon "never verbally approved or protested" the proposed strategy.  <u>Id.</u> at 181.   With regards to whether or not the <u>Cronic</u> presumption of prejudice was triggered by this tactic, the United States Supreme Court observed that despite counsel's concession of guilt, Nixon "retained the rights accorded a defendant in a criminal trial."  <u>Id.</u> at 188.  It contrasted this with the <u>Boykin</u> observation that a plea of guilty absolved the prosecution of the need to put on any proof of the defendant's guilt.  <u>Id.</u> (citing <u>Boykin</u>, 395 U.S. at 242-43 & n. 4.)  <u>Nixon</u> also distinguished the posture of its defendant's case from <u>Brookhart v. Janis</u>, 384 U.S. 1 (1966), in which counsel had agreed to a <u>prima facia</u> bench trial.  <u>Nixon</u> distinguished <u>Brookhart</u>:

> In contrast to <u>Brookhart</u>, there was in Nixon's case no "truncated" proceeding, <u>id.</u>, at 6, shorn of the need to persuade the trier "beyond a reasonable doubt," and of the defendant's right to confront and cross-examine witnesses. While the "prima facie" trial in <u>Brookhart</u> was fairly characterized as "the equivalent of a guilty plea," <u>id.</u>, at 7, the full presentation to the jury in Nixon's case does not resemble that severely abbreviated proceeding. <u>Brookhart</u>, in short, does not carry the weight Nixon would place on it.

543 U.S. at 188-89.[6]

---

[6]   With regards to this court's 28 U.S.C. § 2254(d) review, it makes no difference whether this court is or is not persuaded by the <u>Boykin</u> and <u>Brookhart</u> distinctions tendered in <u>Nixon</u>.

14

Vis-à-vis Pineo's argument that the Maine courts should have distinguished his case from Nixon and applied Cronic's presumption of prejudice, the Maine Law Court reasoned:

> Pineo argues that his attorney's concession strategy should not be afforded substantially heightened deference in this case, and that, pursuant to the standard applied in Cronic, we should presume the attorney's performance was deficient. We disagree. Recently, in Florida v. Nixon, 543 U.S. 175 (2004), the United States Supreme Court reviewed a trial strategy of conceding guilt, unanimously holding that an attorney's failure to obtain express consent to the strategy did not automatically render the attorney's performance ineffective, and that concession strategies must be evaluated pursuant to Strickland's objective reasonableness standard rather than Cronic's presumed prejudice standard. Id. at 178-79. In Nixon, there was overwhelming evidence of guilt, and the defendant's very experienced defense counsel was unable to obtain a favorable plea bargain on his behalf. Id. at 180-81. Even though the defendant did not affirmatively accept or reject the trial concession strategy after his attorney attempted to explain it to him, the attorney, during opening statement and closing argument, conceded the defendant's guilt to murder, focusing his attention on the mitigation evidence presented during the penalty phase of the trial. Id. at 181-83. Nixon's attorney adopted this strategy to preserve credibility before the jury in the hope of saving the defendant's life by avoiding the death penalty. Id. at 180-82. The death penalty was imposed on Nixon. Id. at 184. The Florida Supreme Court vacated Nixon's conviction and ordered that he be granted a new trial. Id. at 184. The Supreme Court reversed that judgment, concluding that the Florida Supreme Court had erroneously applied the Cronic standard when it vacated Nixon's convictions. Id. at 189-91. The Supreme Court held that "[a] presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." Id. at 179 (emphasis added). The Supreme Court noted that " Cronic recognized a narrow exception" to the Strickland standard, "reserved for situations in which counsel has entirely failed to function as the client's advocate." Id. at 189-90 (emphasis added) (discussing why Cronic "infrequently" applies to ineffective assistance of counsel claims).
>
> Nixon makes clear that Cronic can be applied only when defense counsel utterly fails in defending a client. In this case, Pineo's attorney filed motions in limine, even though unsuccessful, to exclude the blood-alcohol test and the testimony of witnesses who had seen Pineo's truck swerve down the road minutes before the collision. The attorney called and cross-examined witnesses, and made various objections during the trial. He attempted to focus the jury's attention on the weaknesses of the

15

> aggravated assault charges. The attorney also obtained a favorable jury instruction for Pineo, and, at sentencing, filed a motion to vacate the aggravated assault and driving to endanger convictions. It cannot be said that the attorney utterly failed as Pineo's advocate.

Pineo v. State, 2006 ME 119, ¶¶14-15, 908 A.2d 632, 638-39.

Although Pineo acknowledges in his 28 U.S.C. § 2254 pleadings that he must distinguish his case from Nixon, his foothold for this uphill climb is his observation that the choice Nixon's counsel was making when conceding guilt was in the context of a capital prosecution where the concession of guilt to the murder could possibly have spared the defendant from a death sentence. Pineo relies on the following dictum in Nixon vis-à-vis defense counsel's concession of the defendant's guilt: "Although such a concession in a run-of-the-mill trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." 543 U.S. at 190-91 (emphasis added)(footnote omitted.)

This term the United States Supreme Court decided Carey v. Musladin, __ U.S. __, 127 S.Ct. 649 (2006), a case that has narrowed the availability of 28 U.S.C. § 2254(d) relief in cases, such as this, in which there is some doubt as to what Supreme Court precedent governs the claim. The Musladin majority cautioned federal courts as follows: "In Williams v. Taylor, 529 U.S. 362 (2000), we explained that 'clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Id., at 412 (emphasis added)." Id. at 653.[7] Accordingly, the dictum in Nixon highlighted by Pineo in fact

---

[7] Justice Stevens, concurring, had the following to say on the applicability of the Court's dicta when undertaking 28 U.S.C. § 2254(d) review:
> In Strickland, we held that the petitioner had not been denied the effective assistance of counsel and upheld his sentence of death. 466 U.S., at 700. While our ultimate holding rejected the petitioner's ineffective assistance claim, the reasoning in our

contravenes his chances for federal habeas relief. Nixon is the most recent opinion by the Court considering Cronic in the context of concessions of guilt and the dictum makes clear that the question of whether or not the Supreme Court would reach a different conclusion on presumed prejudice in a "run-of-the-mill trial" remains open. "Given the lack of holdings from th[e] Court," on the question "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'" as "[n]o holding of th[e] Court required" the Maine Law Court to apply Cronic to Pineo's concession of guilt claim"; "Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law." Musladin, 127 S.Ct. at 654.

### B. The Maine Law Court's Application of *Strickland*

Moving on, Nixon makes clear, in situations where guilt is conceded during a jury trial the court should consider the prosecution's and defense's weaknesses and assets to ascertain whether or not the decision to concede guilt was tactically appropriate or was indeed a failure to "'function in any meaningful sense as the Government's adversary.'" 543 U.S. at 190 (quoting Cronic, 466 U.S. at 666).[8] With respect to counsel's advice to

---

    opinion (including carefully considered dicta) set forth the standards for evaluating such claims that have been accepted as "clearly established law" for over 20 years. See Williams, 529 U.S., at 391. Nevertheless, in a somewhat ironic dictum in her Williams opinion, Justice O'Connor stated that the statutory phrase "clearly established Federal law, as determined by the Supreme Court of the United States: refers to "the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Id., at 412. That dictum has been repeated in three subsequent opinions in which a bare majority of the Court rejected constitutional claims that four of us would have upheld. Because I am persuaded that Justice O'Connor's dictum about dicta represents an incorrect interpretation of the statute's text, and because its repetition today is wholly unnecessary, I do not join the Court's opinion.

Id. at 655 (Steven, J, concurring) (footnote omitted).

[8] In Nixon the Court reflected:
    The Florida Supreme Court's erroneous equation of [defense counsel's] concession strategy to a guilty plea led it to apply the wrong standard in determining whether counsel's performance ranked as ineffective assistance. The court first presumed deficient performance, then applied the presumption of prejudice that United States v. Cronic, 466 U.S. 648 (1984), reserved for situations in which counsel has entirely failed to function as

17

concede guilt and his kitchen-sink claim on ineffective assistance, there is no question that Maine identified an ineffective assistance standard consistent with Strickland. See Pineo, 2006 ME 119, ¶ 10, 908 A.2d at 636-37.

As to these attacks on counsel's performance, the Maine Law Court reasoned:

> Reviewed pursuant to the substantially heightened deference standard accorded to a criminal defense attorney's strategic choices, Pineo's attorney's concession of guilt strategy was not below the performance expected of an ordinary, fallible attorney, and that strategy was not manifestly unreasonable. See McGowan [v. State], 2006 ME 16, ¶ 11, 894 A.2d [493,] 496-97; Levesque [v. State], 664 A.2d [849,] 851 [(Me. 1995)]; see also Nixon, 543 U.S. at 179; Strickland, 466 U.S. at 687-88. There was overwhelming evidence of Pineo's guilt. Arguing that Pineo was not intoxicated, especially after the loss of a motion in limine to exclude the blood-alcohol test, or that Pineo was not the cause of the accident, despite overwhelming evidence to the contrary, could reasonably be perceived as being likely to undermine the defendant's credibility before the jury and with the court at sentencing. In addition, the attorney's comments to the jury that they should hold the State to its high burden of proof and focus on the evidence, despite their possible desire to "lynch" or "throttle" Pineo, were not manifestly unreasonable because they were geared toward lessening both the emotional impact of the testimony of the sympathetic victims and the visceral reaction that defense counsel perceived the jury felt toward Pineo. Moreover, the attorney's decisions not to call an expert witness to offer a psychological report about Pineo's mental state, and not to request a presentence investigation for the sentencing hearing, are strategic choices entitled to substantially heightened deference.
> Pineo was faced with a mountain of incriminating evidence, and his attorney chose an ultimately unsuccessful trial strategy, a strategy Pineo later regretted. It was Pineo's burden to demonstrate to the court that he was denied effective assistance of counsel. There is competent record evidence to support the court's finding that Pineo impliedly consented to the concession strategy, and that the strategy and other defense tactics did not amount to ineffective assistance of counsel. See Aldus, 2000 ME 47, ¶ 14, 748 A.2d at 468.

---

the client's advocate. The Florida court therefore did not hold Nixon to the standard prescribed in Strickland v. Washington, 466 U.S. 668 (1984), which would have required Nixon to show that counsel's concession strategy was unreasonable.

543 U.S. at 189.

2006 ME 119, ¶¶ 16-17, 908 A.2d at 639 (footnote omitted). In a footnote inserted in this portion of its decision the Law Court observed regarding the value of a new pre-sentence investigation: "Pineo's attorney feared that such an investigation would disclose damaging information about Pineo's prior criminal history." Id. at 639 n.12. Earlier on in its opinion the Law Court also pointed out in a footnote that trial counsel had filed a pre-trial motion to exclude evidence of the blood alcohol test results and that motion was denied. Id. at 635 n.6.

As summarized above, the post-conviction court painstakingly set forth its conclusions concerning counsel's decision-making after its lengthy evidentiary hearing and weighing the credibility of Pineo and Attorney Folsom. Again, these factual determinations are afforded the 28 U.S.C. § 2254(e) presumption. In his 28 U.S.C. § 2254 petition Pineo merely cites to portions of his trial counsel's closing statement - counsel "negatively commenting" on his client's conduct and acknowledging the potential that the occupant of the other car might have perished (Sec. 2254 Pet. at 15); this is no more than a rehashing of his assertions before the state courts which provides no basis for this court to revisit the state court finding of fact. The Maine Law Court's application of the ineffective assistance standard to Pineo's claims was straight forward, and far from being an "unreasonable" application of that standard to the facts. See 28 U.S.C. § 2254(d); Knight, 447 F.3d at 11 -12.[9]

---

[9] Vis-à-vis his sentencing-related discontents with counsel's performance, in his 28 U.S.C. § 2254 petition, Pineo also faults his attorney for not presenting evidence to counteract the damaging prior report, or presenting positive evidence through witnesses or letters supportive of Pineo. But as I pointed out earlier, Pineo does not specify what beneficial information might have appeared in a new pre-sentence report or that could have been used to counteract the prior report, and he does not identify the witnesses or letter writers he could have mustered in his favor. See Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir.1974).

19

*Conclusion*

For these reasons, I recommend that the Court **DENY** Pineo's 28 U.S.C. § 2254 petition.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 12, 2007.